```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JASPER L. DOCKERY,

                        Plaintiff,                    MEMORANDUM
                                                      AND ORDER
      -against-
                                                      97-CV-3584 (ARR)
NATHAN TUCKER, et al.,

                        Defendants.
----------------------------------------------------------------x
```

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

This Memorandum and Order addresses the motion of pro se plaintiff Jasper Dockery ("plaintiff") to amend his complaint for a third time. For the reasons set forth below, this Court grants plaintiff leave to amend his complaint. The Court declines to address the procedurally defective dispositive motion filed by defendants the District of Columbia ("the District"), Pam Reed ("Reed"), Phineas Young ("Young"), Alan Dreher ("Dreher"), and Larry Soulsby ("Soulsby") (collectively, "the D.C. defendants"). Instead, the Court sets a briefing schedule for a revised motion by the D.C. defendants and for any dispositive motion by defendant Nathan Tucker ("Tucker").

I.    Background[1]

This action arises out of attempts on the part of law enforcement officers to effect plaintiff's arrest and return him to the District of Columbia to face criminal charges.

---

[1] Much of the background contained herein is taken from this Court's Report and Recommendation of March 26, 2003.

According to allegations in plaintiff's original complaint ("Orig. Compl."), on February 6, 1996, Special Agent Tucker of the Federal Bureau of Investigation ("FBI"), and Detectives Reed and Young of the Washington D.C. Metropolitan Police Department ("D.C. Police"), wielding high powered guns and accompanied by dogs, "invaded plaintiff's family's apartment building" at 2127 Pitkin Avenue, Brooklyn, New York ("the Premises"), without announcing their presence, demanding admission, or presenting a warrant. Orig. Compl. ¶¶ IV(1-3). In the process, the agent and officers allegedly cut off padlocks on the door of the downstairs grocery store, pushed up shutters, broke down the building's main door with a sledgehammer, shot a dog with a tranquilizer gun, and broke into plaintiff's grocery store and apartment, as well as the apartments of three neighboring tenants. Id. ¶ IV(1-2). Plaintiff claimed that the arrest was false and "pretextual," unsupported by a warrant or indictment, and purposefully based on a charge—parental kidnaping—for which plaintiff was never arraigned or prosecuted. Id. ¶ IV(2, 4). Plaintiff further alleged that Tucker provided false information to the presiding magistrate judge at his arraignment in the Eastern District of New York and furnished plaintiff's defense counsel with an "invalid indictment," thereby causing plaintiff to waive objection to his removal to the District of Columbia for trial. Id. ¶ IV(13).[2] Plaintiff asserted that, as a result of defendants' actions, he sustained property damage and loss

---

[2] Plaintiff's original complaint also raised a number of claims against Assistant United States Attorney ("AUSA") Kenneth Kohl for malicious prosecution and constitutional violations, and the Legal Aid Society of New York for ineffective assistance of counsel. See 9/24/98 Opinion & Order [of Judge Allyne R. Ross] ("9/24/98 Op.") at 2, 5-11.

of income and liberty, and his family suffered psychological damage.  Id. ¶ IV(4, 9).  Plaintiff demanded as damages $5,000,000, plus $800 per day of his confinement.  Id. ¶ IV(12).

After defendants Reed and Young filed answers and several other defendants filed dispositive motions, plaintiff moved for leave to amend his original complaint.  The first amended complaint ("1st Am. Compl.") concerned an earlier incident, which took place on October 23, 1995,[3] also at the Premises.  The first amended complaint alleged that during this earlier search, defendants Tucker, Reed, Young, and potential new defendants—unnamed FBI agents, D.C. detectives, and police officers with the New York City Police Department ("NYPD")—engaged in an illegal search of the Premises.  See id. ¶¶ 4-17.  In particular, this pleading asserted that the defendants:  (1) searched the grocery store, plaintiff's apartment, and the other apartments in the Premises, from which assorted items were later found to be missing, see id. ¶¶ 9-16; (2) broke down doors, cut padlocks, and severely damaged walls, ceilings, electrical wiring, and plumbing throughout the Premises, see id.; (3) "set a police attac[k] dog loose" in plaintiff's apartment, terrorizing plaintiff's family, see id. ¶ 11; (4) forced plaintiff's family out of their apartment during a four-hour search, see id. ¶ 13; (5) tear-gassed the property, see id. ¶ 17; and (6) intentionally left the Premises unsecured upon their departure, see id. ad damnum clause.  Charging the defendants with having perpetrated an illegal search (in violation of the Fourth Amendment), and having deprived plaintiff of his

---

[3] The first amended complaint vaguely asserted that the search occurred "from October through November of 1995." 1st Am. Compl. ¶¶ 3-8. The specific date -- October 23, 1995 -- emerged in discovery. See Transcript of 8/18/99 Deposition Testimony of Jasper Dockery at 64-65 (appended as Exhibit H to 8/6/03 Declaration of AUSA Gail A. Matthews).

personal property without due process of law (in violation of the Fifth and Fourteenth Amendments), see id. ¶¶ 18-19, plaintiff sought, in his first amended complaint, a declaratory judgment, as well as $73,490 in property damage, $80,000 in damages from each defendant for his daughters' emotional distress, and $280,000 in punitive damages from each defendant. See id. ad damnum clause.

On September 24, 1998, Judge Ross dismissed most of plaintiff's claims from the original complaint, including the false imprisonment and false arrest claims against Tucker, Reed and Young. See 9/24/98 Op. at 31-32. She also granted Tucker's motion for summary judgment with respect to plaintiff's Fourth Amendment and false affidavit claims. See id. at 32. Accordingly, the only surviving claims from plaintiff's original complaint are his Fourth Amendment claims against Detectives Reed and Young. See id.[4]

In that same opinion, Judge Ross granted plaintiff permission to file his first amended complaint (concerning the events of October 23, 1995), and further directed defendants Tucker, Reed and Young to respond to it. See id. at 31-32. Each did so, denying the allegations of that pleading. See generally Answer of Defendants Pam Reed & Phineas Young to the Amended Complaint; Tucker Answer to Amended Complaint.

Following discovery, plaintiff submitted a proposed second amended complaint ("2d Am. Compl."), dated July 26, 1999, and sought permission to assert new claims on behalf of his children for damages that they allegedly suffered as a result of the searches. Plaintiff also

---

[4] Judge Ross dismissed all of the claims against AUSA Kohl and the Legal Aid Society. See 9/24/98 Op. at 31.

requested leave to replead certain claims against Tucker, Reed and Young, and to add several defendants to the action, including: the District, D.C. police officials Dreher and Soulsby, the New York and Washington D.C. Field Offices of the FBI, former FBI supervisor James Kallstrom, FBI Agents Sam Alston and Brad Gregor, the City of New York, the NYPD, NYPD Officer "Zillas," and other unnamed NYPD supervisory officials. See generally 2d Am. Compl. In an Opinion and Order dated June 18, 2003 ("6/18/03 Op."), Judge Ross adopted this Court's 3/26/03 Report and Recommendation regarding plaintiff's application for permission to file his second amended complaint. The 6/18/03 Opinion granted plaintiff permission to amend his complaint to assert claims against the District, as well as against Dreher and Soulsby in their official capacities, and otherwise denied plaintiff's motion to further amend his complaint. See generally 6/18/03 Op.

Thereafter, this Court reopened discovery for the limited purpose of permitting plaintiff to serve discovery demands on Dreher and Soulsby. See 6/27/03 Memorandum & Order. Prior to the close of this supplemental discovery period, plaintiff moved to amend his complaint for a third time, see 6/25/03 Motion for Third Amended Complaint to Conform with Evidence ("Mot. for 3d Am. Compl."), and submitted a proposed third amended complaint ("3d Am. Compl."), which, liberally construed, contains the following new allegations: (1) a demand for damages for loss of business income, see 3d Am. Compl. at 8-18; (2) common law tort claims[5] against Tucker, Reed, Young and the District, see id. at 8, 10; see also Mot. for

---

[5] Again liberally construing the proposed amendment, plaintiff appears to seek recovery under
(continued…)

3d Am. Compl. at 3; (3) claims against Dreher and Soulsby, in their individual capacities, for violations of the Fourth Amendment and the due process clause of the Fourteenth Amendment, see 3d Am. Compl. at 1, 12-16[6]; and (4) claims for denial of due process against Dreher and Soulsby in their official capacities, and the District, see id. at 13-14, 15-16.[7] Plaintiff also seeks to replead the claims already asserted in his first and second amended complaints.[8] All defendants oppose the proposed third amended complaint. See generally Memorandum of Law of Defendant Special Agent Nathan Tucker in Opposition to Plaintiff's "Motion for Third Amended Complaint to Conform with Evidence" ("Tucker Mem. of Law"); Affirmation in Opposition to Plaintiff's Motion for Third Amended Complaint to Conform with Evidence ("D.C. Def. Affirm.").[9]

---

[5](…continued)
one or more of the following tort theories: conversion, trespass to chattels, and trespass to land.

[6] Plaintiff specifically alleges a denial of his "right to due process of law as protected by the Fourteenth Amendment . . . ." 3d Am. Compl. at 14 (emphasis added); see also id. at 16. However, it is the Fifth (not the Fourteenth) Amendment that protects individuals from deprivations of property without due process by the District of Columbia and its employees. See Bolling v. Sharpe, 347 U.S. 497, 498 (1954) ("The Fifth Amendment . . . is applicable in the District of Columbia . . . .").

[7] See supra n.6.

[8] Plaintiff's proposed third amended complaint repleads his Fourth Amendment claims relating to the 1995 search and his due process claims against Tucker, Reed, and Young, see 3d Am. Compl. at 9-12; his Fourth Amendment Monell claim against the District, see id. at 12-15; and his Fourth Amendment official capacity claims against Dreher and Soulsby, see id.

[9] The Court has paginated the D.C. defendants' unpaginated affirmation, with the first page designated as page 1 and the last page designated as 8.

(continued…)

During the pendency of plaintiff's third motion to amend the complaint, all defendants sought and received permission from the Court to file dispositive motions, see 8/28/03 Order [of Judge Ross] endorsed on 8/27/03 Letter from E. David Woycik, Jr., Esq., counsel for the D.C. defendants; 9/10/03 Order [of Judge Ross] endorsed on 9/8/03 Letter from Gail Matthews, counsel for Tucker.  The D.C. defendants filed their dispositive motion with the Court; however, Tucker's attorney informed Judge Ross's Chambers by telephone that Tucker would defer his motion until after a ruling on plaintiff's proposed third amended complaint.

II.     Motion to Amend the Complaint for a Third Time[10]

In general, "[a] pro se complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) (internal citations omitted).  In determining whether a claim or proposed claim

---

[9](…continued)
In their oppositions to plaintiff's motion for leave to amend the complaint, defendants write that, "substantively, [plaintiff] seeks nothing more than to add a monetary damage claim for 'loss of business' . . . ." Tucker Mem. of Law at 14; D.C. Def. Affirm. at 3. However, an examination of plaintiff's motion reveals that he is also seeking to add the other new claims identified above.

[10]  Plaintiff's motion to amend his complaint for a third time is entitled "Motion for Third Amended Complaint to Conform with Evidence."  Plaintiff seeks permission to file an amended complaint pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, which states in relevant part:  "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed. R. Civ. P. 15(b); see Mot. for 3d Am. Compl. at 1-3.  As there has been no trial in this action, Rule 15(b) is inapposite.  This Court will therefore treat plaintiff's motion for leave to amend as one brought pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

states a cause of action, the question is "whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Clay v. Martin, 509 F.2d 109, 112 (2d Cir. 1975) (quotation marks and citation omitted). However, "[a]lthough a pro se plaintiff is held to less stringent pleading standards than attorneys, the grant or denial of leave to amend is within the discretion of the district court when that amendment is futile," Sacco v. Bailey, 93 Civ. 1438 (KTD), 1994 WL 48800, at *3 (S.D.N.Y. Feb. 16, 1994) (internal citation omitted), or "'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice' other parties[;] or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery." Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000) (internal citations omitted).

Although all defendants generally oppose plaintiff's motion to amend his complaint, see Tucker Mem. of Law at 1-2; D.C. Def. Affirm. at 1 & 3, they specifically address only plaintiff's new demand for damages due to the loss of business income. See Tucker Mem. of Law at 14-19; D.C. Def. Affirm. at 3-8. Indeed, defendants do not even acknowledge the existence of plaintiff's other proposed amendments.[11] Therefore, but for the loss of business income allegation, the other proposed amendments—to wit, the individual capacity claims against Dreher and Soulsby; tort claims against Tucker, Reed, Young, and the District; and

---

[11] Counsel for defendant Tucker apparently overlooked plaintiff's proposed tort claims, which resemble the allegations in plaintiff's earlier pleadings. Counsel for the D.C. defendants, in his belatedly filed objections to plaintiff's motion to amend, merely lifted portions of Tucker's brief verbatim, without attribution or analysis of the additional claims against his clients.

denial of due process claims against Dreher, Soulsby and the District—will be deemed unopposed and will be allowed. In addition, for the reasons set forth below, this Court will also permit plaintiff to add his demand for loss of business income.

  A. Demand for Damages for Loss of Business Income

Plaintiff alleges that, as a consequence of the October 23, 1995 search, he suffered, and will continue to suffer, loss of income from his grocery store, totaling $2,363,942. See 3d Am. Compl. at 17-18. This figure reflects plaintiff's estimated losses over a period of 29 years, beginning in 1995. See id. Defendants challenge the addition of this demand for damages for loss of business income, arguing that the demand is futile, the result of undue delay, prejudicial to defendants, brought in bad faith, and a dilatory tactic. See Tucker Mem. of Law at 15-18; D.C. Def. Affirm. at 4-7. Each of these bases for opposing the proposed amendment is addressed in turn.

    1. Futility

A futile amendment is one that "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. IBM, 310 F.3d 243, 258 (2d Cir. 2002). Defendants argue that plaintiff's loss of business income claim is futile in two respects: the three-year statute of limitations on the claim has run and "plaintiff's sworn testimony establishes that his proposed amended claim[ ] can never be proven." Tucker Mem. of Law at 16-17; D.C. Def. Affirm. at 6.

With respect to the statute of limitations argument, while it is true that a three-year limitations period applies to section 1983 and Bivens claims arising in New York, see

Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (section 1983); Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987) (Bivens actions), plaintiff's demand for loss of business income damages would appear to relate back to the claims made in his first amended complaint. "In order for a claim to relate back, it must arise out of the same 'conduct, transaction, or occurrence' as the claims raised in the earlier filing. The pertinent inquiry, in this respect, is whether the original complaint gave the defendant fair notice of the newly alleged claims." Wilson v. Fairchild Republic Co., 143 F.3d 733, 738 (2d Cir. 1999) (internal citations omitted). Moreover, "[w]here no new cause of action is alleged . . . [courts] liberally grant[ ] relation back . . . ." Stevelman v. Alias Research Inc., 174 F.3d 79, 87 (2d Cir. 1999).

Here, plaintiff's allegation of loss of business income does not present a new cause of action, but rather adds a new demand for damages arising out of conduct alleged in his first amended complaint. Defendants were on notice that plaintiff might be seeking such damages, not only because his supposed loss of income resulted from the same events described in the first amended complaint, but also because that pleading specifically sought a declaratory judgment that defendants' conduct "damaged Plaintiff's grocery store[,] DECREASING it in VALUE and in such a destroyed state, as to prevent it being reopened." 1st Am. Compl. ad damnum clause (emphasis in original). In sum, plaintiff's current proposed amendment merely adds a demand for monetary damages for acts for which he originally sought a declaratory judgment and thus leave to amend should not be denied as time-barred. Accord Heinold Commodities, Inc. v. New York Mercantile Exch., 78 F.R.D. 190, 191-92 (S.D.N.Y. 1978)

(permitting plaintiff to amend complaint that originally sought only equitable and declaratory relief to add demand for monetary damages for injury to its good will and business reputation).

Defendants further oppose the lost income amendment on the ground that plaintiff's "sworn testimony establishes" that he will be unable to prove his loss of business income claim. Tucker Mem. of Law at 17; D.C. Def. Affirm. at 6. In effect, defendants do not challenge the sufficiency of the proposed amendment under Fed. R. Civ. P. 12(b)(6) but instead invite the Court to determine whether the allegation could survive a motion for summary judgment. Ordinarily, "[d]eterminations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss." Nettis v. Levitt, 241 F.3d 186, 194 n.4 (2d Cir. 2001). To be sure, a summary judgment analysis may be utilized in connection with a motion to amend where, in contrast to the present case, the motion to amend "is made in response to a Fed. R. Civ. P. 56 motion for summary judgment, and the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (collecting cases).

Here, plaintiff's motion to amend preceded the D.C. defendants' Rule 56 motion. Before the Court considers the D.C. defendants' factual arguments against the proposed amendment, all parties should fully brief the issues and present "all relevant evidence in support of their positions." Milanese, 244 F.3d at 110. While the parties in this case have submitted some evidence regarding the proposed amendment, defendants concede that there is a need for additional discovery in order to test the validity of plaintiff's allegation of loss of

business income.  See Tucker Mem. of Law at 18; D.C. Def. Affirm. at 7.  Moreover, Tucker previously indicated that he plans to move for summary judgment after plaintiff's motion to amend has been decided.

Under these circumstances, the futility of the proposed amendment should now be measured against a Rule 12(b)(6) standard, not a Rule 56 standard.  See, e.g., Bonano v. Southside United Housing Dev. Corp., -- F.Supp.2d --, No. 03-CV-5040 (ILG), 2005 WL 758195, at *2 (E.D.N.Y. Apr. 5, 2005).  As defendants have not opposed the demand for lost business income on Rule 12(b)(6) grounds, the amendment should not be disallowed as futile.  It is not the Court's role at this juncture to weigh the implausibility of the allegation or sufficiency of the proof supporting that demand.

2.  Unexplained Delay and Prejudice

An unexplained delay in seeking leave to amend is not in and of itself a ground for denying an amendment.  See Oneida Ltd. v. RedTagBiz, Inc., No. 01-CV-988, 2002 WL 31553529, at *3 (N.D.N.Y. Nov. 15, 2002).  However, where an unexplained delay is coupled with a likelihood of prejudice to defendants, courts have the discretion to deny a proposed amendment.  See id.  In making a determination of prejudice, courts "consider whether the proposed amendment would: (1) require the non-movant to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-movant from bringing a timely action in another jurisdiction."  Id. at *4.  While plaintiff did delay in seeking to add this allegation, the

resulting prejudice to defendants is not so significant as to warrant denial of plaintiff's proposed amendment.

Defendants argue that permitting plaintiff to assert a demand for loss of business income will both "require extensive additional discovery" and "prolong [the] litigation." Tucker Mem. of Law at 18; D.C. Def. Affirm. at 6, 7. The discovery that defendants anticipate includes subpoenaing government records, such as records from New York and federal taxing authorities, as well as documents from plaintiff's suppliers, vendors, accountants, and insurance carriers. See Tucker Mem. of Law at 18; D.C. Def. Affirm. at 7. It is unclear why such discovery would involve the expenditure of significant additional resources.

As to defendants' concern that this litigation will be prolonged, the additional time required to conduct discovery need not unduly delay the resolution of this case. To minimize the resulting delay, this Court will set a briefing schedule for dispositive motions on those claims for which discovery has been completed. If such dispositive motions do not dispense with the need to conduct discovery on plaintiff's demand for loss of business income, this Court will permit a brief and focused period for discovery on that claim.

### 3. Bad Faith

Defendants also oppose plaintiff's demand for lost business income on the ground that plaintiff's allegation is made in bad faith. See Tucker Mem. of Law at 15-16; D.C. Def. Affirm. at 4-5. This argument essentially restates defendants' argument that plaintiff will be unable to prove his allegations. While there is no clear standard in this Circuit for determining

what constitutes a bad faith amendment, cases in which leave to amend was denied on the ground of bad faith primarily involved amendments that were designed to gain an unfair tactical advantage in litigation. See, e.g., State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990) (upholding district court finding of bad faith where plaintiff did not seek leave to amend complaint until after its complaint was dismissed and defendant credibly argued that plaintiff "deliberately chose not to amend its complaint earlier to include causes of action based on foreign law because any admission that foreign law applied . . . would have increased the chance of dismissal on forum selection clause or forum non conveniens grounds."); Millgard Corp. v. E.E. Cruz/NAB/Frontier-Kemper, No. 99 Civ. 2952 LBS, 2002 WL 31812710, at *5 (S.D.N.Y. Dec. 12, 2002) (finding bad faith where the timing of a proposed amendment, as well as statements of counsel, revealed that the proposed amendment had not been brought earlier as a litigation strategy and that the amendment was only sought after it became evident that this original litigation strategy had failed); Oneida Indian Nation of N.Y. State v. County of Oneida, 199 F.R.D. 61, 81-85 (N.D.N.Y. 2000) (finding bad faith where proposed amendments were contrary to repeated earlier assurances that the remedy sought in the proposed amendments would not be pursued).

Here, in contrast, defendants are challenging the sufficiency of plaintiff's proof. Such a challenge is more appropriately addressed in the context of a properly briefed summary judgment motion.

4. Dilatory Tactic

Defendants characterize plaintiff's motion to amend as a dilatory tactic, noting that the motion was made at a "late juncture" after plaintiff had already filed "countless motions in this action including three motions to amend his complaint," Tucker Mem. of Law at 16; D.C. Def. Affirm. at 5, and after the District Court "had granted summary judgment to most of the defendants on most of the claims in the original complaint." Tucker Mem. of Law at 16. Nevertheless, although plaintiff has filed numerous motions in this case, this Court is not persuaded that plaintiff has done so in order to delay the case. Not surprisingly, pro se plaintiffs may require more attempts at pleading their claims than parties represented by counsel. Plaintiff's amended complaints, particularly his latest proposed one, appear to represent his increased understanding of the law and the causes of action and remedies available to him, rather than an attempt to delay resolution of this matter.

B. Resolution of Plaintiff's Motion to Amend

For the foregoing reasons, plaintiff's motion to amend his complaint is granted, and the third amended complaint is deemed filed and served. Defendants shall answer that complaint or otherwise move with respect to it by May 24, 2005.

The third amended complaint is now the operative complaint in this action and supersedes both the first amended complaint and those claims in the second amended complaint that plaintiff was allowed to plead. As the third amended complaint addresses only the events of October 23, 1995 and does not incorporate the remaining claims against Reed and Young

from the original complaint, this Court will treat these claims as abandoned unless plaintiff otherwise notifies this Court and defendants by May 10, 2005.

III.         <u>Dispositive Motions</u>

Also pending before this Court, on a referral from Judge Ross, is the motion of the D.C. defendants to dismiss or for summary judgment, which was filed during the pendency of plaintiff's motion to amend his complaint for a third time. The defense motion does not indicate whether it is directed at the claims that were operative at the time the motion was filed or whether it is, instead, a response to plaintiff's request for permission to file his proposed third amended complaint.[12] Although the D.C. defendants seek dismissal based on plaintiff's alleged failure to state claims upon which relief may be granted, they do not identify -- let alone argue -- the basis on which any claim fails under Rule 12(b)(6).[13] In addition, to the extent that the motion seeks summary judgment, it is conclusory, incoherent, light on

---

[12] In recounting the procedural history of the case, the D.C. defendants seem to suggest that their motion is directed at the third amended complaint. <u>See</u> Motion of the [D.C. Defendants] to Dismiss the Complaint or Alternatively for Summary Judgment ("D.C. Def. Mot.") at 7-8 (referring to the "instant motion regarding the proposed third amended complaint") (emphasis added). However, the argument section of their papers makes no reference whatsoever to the proposed third amended complaint; instead, the D.C. defendants refer to the sole remaining claim in the original complaint, <u>see</u> <u>id.</u> at 17, and to claims in the second amended complaint, including several nonexistent ones, <u>see</u> <u>id.</u> (referring to Sixth Amendment claims against Dreher, Soulsby and the District), and others that were disallowed by the Court, <u>see</u> <u>id.</u> (referring to Fourth, Fifth and Sixth Amendment claims against Reed and Young in the second amended complaint). At no point do the defense motion papers address the first amended complaint, which contained several operative claims against Reed and Young.

[13] The sole basis for dismissal is identified in the opening paragraph of the brief, which merely requests that the claims be dismissed pursuant to Rule 12(b)(6). <u>See</u> D.C. Def. Mot. at 1.

argument, and violative of local procedural rules designed to streamline the resolution of such motions.[14] Less egregious violations have resulted in denials of motions for summary judgment. See, e.g., AIM Int'l Trading, L.L.C. v.Valcucine S.p.A., No. 02 Civ. 1363 (PKL), 2003 WL 21203503, at * 11 (S.D.N.Y. May 22, 2003) (denying motion for summary judgment due to movant's failure to comply with local rule requiring statement of undisputed facts); Riley v. Town of Bethlehem, 5 F.Supp.2d 92, 93-94 (N.D.N.Y. 1998) (denying motion for summary judgment where movant failed to include citations to the record in statement of undisputed facts, as required by local civil rule); see also Local Civil Rule 7.1 ("Willful failure to comply with this rule [regarding the form and content of memoranda of law] may be deemed sufficient cause for the denial of a motion . . . ."). While this Court ordinarily prefers to address the merits of a dispositive motion, the Court cannot conduct a meaningful inquiry in the current posture of this case, given the sparse and vague nature of moving papers and the voluminous record in the case. Therefore, any defendant wishing to move to dismiss or for summary judgment[15] shall address the dispositive motion to the now operative complaint(s) and shall fully comply with all applicable federal and local rules and with the briefing schedule set forth herein.

---

[14] The motion does not contain a statement of undisputed facts, as required by Local Civil Rule 56.1, is not "divided, under appropriate headings, into as many parts as there are points to be determined," as required by Local Civil Rule 7.1, and does not appear to have been accompanied by any notice to pro se litigants opposing summary judgment, as required by Local Civil Rule 56.2.

[15] Counsel for Tucker sought and received permission to file a dispositive motion, but later notified Judge Ross's chambers that Tucker would defer filing his motion until after a ruling on plaintiff's proposed third amended complaint.

For example, the parties shall comply with Local Civil Rules 7.1, 56.1 and 56.2.[16] Therefore, any motion for summary judgment shall include, inter alia, a statement of undisputed facts and citations to the record, as required by Local Civl Rule 56.1,[17] and opposition papers must include a responsive statement that identifies portions of the record that controvert the facts alleged by the movant. To the extent necessary, affidavits shall also be annexed to the motions or opposition thereto.[18] Furthermore, the parties' papers shall address each claim against each individual separately and shall include legal arguments supported by case law.[19]

---

[16] Local Civil Rule 56.2 addresses the notice that represented parties moving for summary judgment must send to pro se parties.

[17] A copy of Local Civil Rules 7.1, 56.1 and 56.2 will be mailed to plaintiff along with this Memorandum and Order. Defendants may access the Local Rules via the internet.

[18] Defendants Reed and Young erroneously suggest that Judge Ross's Opinion and Order of 9/24/98 entitles them to summary judgment on plaintiff's Fourth Amendment claim pertaining to the 1996 search. See D.C. Def. Mot. at 17. However, in granting summary judgment to Tucker on that claim, and declining to do so sua sponte as to Reed and Young, Judge Ross expressly noted that "this court can not consider whether to grant defendants Reed and Young summary judgment without motions and affidavits from those defendants . . . . [W]hether to grant summary judgment based on qualified immunity depends on the information possessed by the particular law enforcement officer. This court has been presented with no evidence regarding the information possessed by defendants Reed and Young." 9/24/98 Op. at 29 n.13 (emphasis added). The D.C. defendants' latest motion papers have done nothing to cure that evidentiary deficiency.

[19] To the extent that any such motion is addressed to the Fourth Amendment, due process, and/or tort claims, the parties shall brief the following issues: the relationship between plaintiff's due process claims and his municipal liability claims; the impact of any defenses on plaintiff's procedural due process claims; plaintiff's Fourth Amendment claims related to the destruction of and damage to his property; the impact of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. (2000), on any claims; and the appropriate choice of law by which

(continued...)

As defendants have expressed the need for discovery on plaintiff's demand for lost business income damages, motions practice concerning that allegation is deferred, at least as to arguments contingent on matters outside the pleadings. Following the conclusion of the next round of dispositive motions, this Court will, if necessary, establish a limited period of discovery concerning plaintiff's lost business income.

Given the age of this case, the number of pleadings, and the frequent extensions of discovery that have been granted, the Court sets the following briefing schedule: Defendants shall serve and file (via ECF) their dispositive motions by May 24, 2005; plaintiff shall have until June 17, 2005 to serve his response; and defendants shall have until June 30, 2005 to reply.

The Clerk is directed to docket this Opinion and Order via ECF and to mail a copy, along with a copy of Local Civil Rules 7.1, 56.1 and 56.2, to pro se plaintiff.

SO ORDERED.

Dated: April 28, 2005
Brooklyn, New York

/s/
ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE

---

[19](…continued)
plaintiff's tort claims and defendants' defenses should be analyzed.