UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------  X
                                                                  :
JASPER L. DOCKERY,                                                :       97-CV-3584 (ARR)(RLM)
                                                                  :
                                       Plaintiff,                 :       NOT FOR ELECTRONIC
                                                                  :       OR PRINT
          -against-                                               :       PUBLICATION
                                                                  :
NATHAN TUCKER, et al.,                                            :       OPINION AND ORDER
                                                                  :
                                       Defendants.                :
                                                                  :
----------------------------------------------------------------  X
```

ROSS, United States District Judge:

Currently pending before the court are the Report and Recommendation of the Honorable Roanne L. Mann dated December 5, 2007 ("2007 R&R") (Dkt. No. 292) and the parties objections (Dkt. Nos. 296, 298, 302). Defendants, Special Agent Nathan Tucker of the Federal Bureau of Investigation ("Tucker") and Detectives Pamela Reed ("Reed") and Phineas Young ("Young") of the District of Columbia Police Department object to Judge Mann's recommendation that they be denied summary judgment on plaintiff's § 1983 claims of unlawful entry and destruction of property in violation of his Fourth Amendment rights, and Reed and Young object to the recommendation that they be denied summary judgment on plaintiff's associated common law tort claims. Plaintiff *pro se*, Jasper Dockery ("Dockery"), objects, among other things, to findings that there existed valid arrest warrants justifying entry into Dockery's premises, and he seeks to file a fourth amended complaint joining his daughters as plaintiffs in this lawsuit, now entering its twelfth year.

1

For the reasons that follow, all of Dockery's objections are rejected, and he is denied leave to file his proposed fourth amended complaint. Based on factual material first submitted to the court in litigating the instant objections, however, defendants' motions for summary judgment dismissing all remaining claims in the suit – that is, plaintiff's tort claims and claims of unlawful entry and destruction of property in violation of his Fourth Amendment rights – are granted.

## **PROCEDURAL HISTORY**

The tortured procedural history of this protracted lawsuit is recounted in detail in Judge Mann's Report and Recommendation dated September 6, 2006 ("2006 R&R") (Dkt. No. 271), familiarity with which is assumed. Summarized here are only those limited portions of the procedural background essential to an understanding of the issues posed by the pending objections to the 2007 R&R.

This case arises out of two attempts by law enforcement officers to arrest plaintiff at his Brooklyn residence and return him to the District of Columbia to face criminal charges. The first incident occurred on October 23, 1995, when law enforcement officers, armed with an arrest warrant issued in August 1995, broke into the premises at 2127 Pitkin Avenue in Brooklyn (the "Premises"), but were unable to locate plaintiff. The second incident occurred on February 6, 1996, when law enforcement officers again broke into the Premises and this time found plaintiff concealed in a hiding space between the ceiling of the first floor and the floorboards of the second.

In his original complaint, dated June 19, 1997, plaintiff sued Tucker, Reed and Young, among others,[1] alleging, *inter alia*, that on February 6, 1996, they unlawfully arrested him without a warrant and unlawfully entered and searched the Premises and destroyed his property, all in violation of his Fourth Amendment rights. By Opinion and Order dated September 24, 1998, this court dismissed most of plaintiff's claims, including all Fourth Amendment claims against Tucker. The court found, in part, that Dockery's arrest was not warrantless as at least three of four pending arrest warrants for him issued by the Superior Court of the District of Columbia were valid and then in effect. See 9/24/98 Op. at 20-21. The court also found that exigent circumstances justified granting Tucker qualified immunity with respect to the scope of the search conducted to effect Dockery's arrest. Id. at 24-27. While the same record of facts might also have justified dismissing Reed and Young based on qualified immunity, the court declined to rule on the issue *sua sponte* as these defendants had failed to advance the argument or present any evidence regarding what information was known to them at the time of the 1996 entry and search. See id. at 28, n. 13. By Opinion and Order dated March 26, 1999, the court denied Dockery's Motion for Reconsideration of the 9/24/08 Order insofar as it granted defendants' motions to dismiss and for summary judgment (Dkt. No. 68).

In response to defendants' motion to dismiss the original complaint, plaintiff also proposed to submit an amended complaint setting forth wholly new allegations against defendants and others in connection with the prior entry into the Premises, on October 23, 1995. This pleading alleged as to the earlier, separate incident similar claims of warrantless and otherwise

---

[1]     The remaining defendants were dismissed from the case by Opinion and Order dated September 24, 1998 (Dkt. No. 44) ("9/24/98 Op.").

unlawful entry and search of the Premises in violation of plaintiff's Fourth Amendment rights.  In

the September 24, 1998 Opinion and Order, the court granted plaintiff permission to file this

amended complaint.  See 9/24/08 Op. at 29-30.  Thereafter, the court twice granted plaintiff's

additional requests to amend his pleading, allowing him to add various defendants, claims and

further damage demands.  See Dkt. Nos. 152 (granting leave to file Second Amended Complaint

on June 18, 2003) & 207 (granting leave to file Third Amended Complaint on June 28, 2005).

The only proposed amendments that were denied plaintiff were his request to assert claims on

behalf of his children and a claim that the removal of his daughter Tiara violated his due process

rights.  See Report and Recommendation dated March 26, 2003 (Dkt. No. 148) at 5-6, 8-11

(adopted by M&O dated 6/18/03 (Dkt. No. 152)).

   In 2005, at the close of discovery regarding the October 25, 1995 incident, all defendants

brought motions to dismiss or for summary judgment, see Dkt. Nos. 215, 227, and plaintiff cross-

moved for summary judgment against all defendants, see Dkt. Nos. 241, 246.  Following referral

of these motions pursuant to 28 U.S.C. § 636(b), Judge Mann issued the 2006 R&R.  In it, she

recommended dismissing from the case a number of claims and defendants, and denying

plaintiff's cross-motion for summary judgment, rulings that are no longer contested in the case.[2]

---

[2]      Thus, pursuant to 28 U.S.C. § 636(b)(1), having received from the parties no
substantial objections and having conducted a de novo review of the record, the court adopts the
following recommendations in the 2006 R&R: those granting (1) dismissal for lack of standing
of all claims brought on behalf of residents of the Premises other than Dockery, see 2006 R&R at
section I.B, pp. 19-20; (2) dismissal of the official capacity claims against Dreher & Soulsby, see
id. at section I.C, pp. 20-21; (3) summary judgment to Dreher & Soulsby on all individual
capacity claims against them, see id. at section II.C.3, pp. 36-39; (4) summary judgment to all
defendants on all claims for damages for loss of business, see id. at section II.G, pp. 60-65; (5)
summary judgment to all defendants on all due process claims arising out of the 1995 search of
the Premises, see id. at section II.B, pp. 23-30, as supplemented by 2007 R&R at section IV, pp.
30-, 31; and (6) summary judgment to the District of Columbia on the Monell claims against it,

4

She also concluded that the August 1995 District of Columbia arrest warrant for Dockery was valid and in effect at the time of the 1995 entry, both because plaintiff was collaterally estopped from relitigating the validily of the warrant, which had previously been established by the D. C. Superior Court in deciding plaintiff's collateral attack on his criminal conviction, see id. at 40-43, and because the evidence in the record independently established the validity of that warrant, see id. at 43-45. Nonetheless, she recommended denying defendants' motions insofar as they sought summary judgment regarding the legality under the Fourth Amendment of their 1995 entry into the Premises, the scope of the search, and plaintiff's common law tort claims, concluding that there existed a material issue of fact as to whether defendants reasonably believed that plaintiff was at the Premises at the time of the 1995 search, when the agents attempted to execute the warrant. See id. at 45-54, 57-59.

Plaintiff sought "reconsideration" of certain of the recommendations made in the 2007 R&R, see Dkt. No. 286, and defendants Tucker, Reed and Young filed objections to all recommendations that their dispositive motions be denied, see Dkt. Nos. 275, 280. As defendants' objections relied upon substantial new evidence that was not part of the record presented to Judge Mann, the court interpreted all objections as motions for reconsideration and referred these, too, to Judge Mann to assess in the first instance.

In the 2007 R&R, Judge Mann recommended accepting Reed and Young's argument, raised for the first time in their objections to the 2006 R&R, that they were entitled to qualified immunity in connection with the 1996 entry and search, see 2007 R&R at 24-28, warranting the

_____

see id. at section II.G, pp. 54-57, as supplemented by 2007 R&R at section VI, p. 41; and the recommendation denying Dockery's cross-motion for summary judgment on all claims, see id. at section III, pp. 64-65.

dismissal against them of all claims concerning the 1996 entry that had remained open in the

9/24/08 Op. After analyzing the supplemented factual record on the 1995 entry, however, Judge

Mann adhered to her recommendation that defendants' motions for summary judgment on the

legality of the 1995 entry and search and plaintiff's associated common law tort claims be denied,

concluding that there existed disputed issues of material fact notwithstanding defendants'

supplementation of the record. See id. at 11-23. For reasons discussed in her report, she also

denied Dockery's motion for reconsideration. See id. at 30-31, 41.


## THE INSTANT MOTIONS

Both plaintiff and defendants – Tucker, Reed and Young -- have found fault with certain

aspects of the 2007 R&R. Defendants, yet again adducing substantial new evidence not

previously before the court, object to Judge Mann's conclusion that a material issue of fact – the

reasonableness of the belief that plaintiff was at the premises – precludes summary judgment on

plaintiff's Fourth Amendment claims of unlawful entry and search in 1995 and plaintiff's

common law tort claims. See Dkt. No. 296 (Reed & Young's Objections), 298 (Tucker's

Objections). Dockery (1) renews his attack on the validity of the arrest warrants sought to be

executed in both the 1995 and the 1996 entries, assertedly on the basis of newly discovered

evidence, (2) objects to the recommendation that qualified immunity should be granted to Reed

and Young in connection with the 1996 entry, (3) seeks to assert a due process claim concerning

the removal of his daughter Tiara from his home, and (4) seeks to file a fourth amended

complaint, this time to add several of his daughters as plaintiffs in the suit through permissive

joinder, pursuant to Rule 20, Fed. R. Civ. P. See Dkt. Nos. 300 (Dockery's motion for joinder), 302 (Dockery's Objections).

As noted above and for the reasons that follow, the court agrees to consider defendant's new evidence and, on that basis, grants defendants' remaining motions for summary judgment dismissing plaintiff's § 1983 claims that the 1995 entry and search of the Premises violated his rights under the Fourth Amendment as well as his common law tort claims. Additionally, the court finds that Dockery's objections to the 2007 R&R are meritless, and denies permission for joinder of his daughters as plaintiffs. Accordingly, the court dismisses the lawsuit in its entirety with prejudice.

## DISCUSSION

### I.      Defendant's Objections to the 2007 R&R

#### A.      Plaintiff's Fourth Amendment Claim Against Tucker Concerning the 1995 Search

Tucker objects to the 2007 R&R's conclusion that he was not entitled to summary judgment on plaintiff's Fourth Amendment claim involving the 1995 search of the Premises. See Def. Tucker's Mem. of L. in Supp. of Obj., at 11-17 (Dkt. No. 298) (hereinafter "Tucker Obj."). Previously, Judge Mann had determined in the 2006 R&R that that claim survived summary judgment because a genuine issue of material fact existed as to the reasonableness of Tucker's belief that plaintiff was at the Premises when the agents attempted to execute the warrant: while Tucker alleged that he had seen plaintiff through a window shortly before the FBI Task Force entered the Premises, plaintiff disputed that he was at the Premises that day. See 2006 R&R at

47-49.

In moving for reconsideration of the 2006 R&R, Tucker maintained that even if the parties disputed plaintiff's presence, the entry and search were nevertheless reasonable. See Deft. Tucker's Mem. of L. in Supp. of Mot. for Partial Recons. of 2006 R&R (Dkt. No. 280) ("Tucker Mem.") at 7-13. Essentially, Tucker argued that his claimed sighting of plaintiff could be disregarded because other circumstances surrounding the execution of the warrant gave rise to a reasonable belief that plaintiff was at the Premises. Yet Tucker cited no evidence detailing the surrounding circumstances; rather, he relied on his previously submitted Rule 56.1 statement, in which he justified the entry based on his disputed observation of plaintiff, as well as other factors that Judge Mann discounted as irrelevant, such as the gravity of crimes for which plaintiff was being sought. See id. at 11-12. Although Tucker's memorandum of law did reference several factors suggesting a connection to plaintiff -- such as the presence of plaintiff's common-law wife -- there was nothing in the record to establish that Tucker had knowledge of these factors prior to the entry. See id. at 2. As an alternative argument on his motion for reconsideration, Tucker contended that even if the male he saw through the window at the Premises was not plaintiff but another black male, Michael Barrett ("Barrett"), Tucker's mistake was objectively reasonable, thus entitling him to qualified immunity. See id. at 13-14. While qualified immunity may in fact be based on mistaken identification, see generally Anderson v. Creighton, 483 U.S. 635, 641 (1987), the record contained no evidence concerning the physical similarities between Barrett and plaintiff, such that the court could assess whether the mistake was objectively reasonable.

Consequently, Judge Mann rejected both defense theories, and recommended that this court deny the defense motion for summary judgment as to the constitutionality of the 1995

search; she concluded that the factual circumstances proffered by Tucker were insufficient either to create a reasonable belief of presence or to support a finding that it was objectively reasonable to mistake Barrett for plaintiff. See 2007 R&R at 15, 20. See also, e.g., Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) ("Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct *under the circumstances*, summary judgment for the officers is appropriate.") (emphasis added); Taft v. Vines, 70 F.3d 304, 312 (4th Cir. 1995) (deciding qualified immunity based on "information *actually* possessed by the officers at the critical time") (emphasis in original), aff'd on rehearing en banc, 83 F.3d 681, 683-84 (4th Cir. 1996).

In his pending objections to the 2007 R&R, Tucker challenges Judge Mann's reading of the record as unduly strained and narrow. See Tucker Obj. at 12. Notably, Tucker points to no specific fact that Judge Mann construed improperly, but instead generally directs this court to consider his prior arguments. See id. Additionally, Tucker requests that the court now accept new evidence – a supplemental declaration by Tucker and a declaration by retired FBI Special Agent Sam Alston, the case agent in charge of the 1995 search – in support of Tucker's objections. See id. at 13.

### 1. Tucker's New Evidence

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, a district court reviewing a magistrate judge's report and recommendation "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). This court concludes that on the basis of the record as it existed at the time Judge Mann issued her 2007 R&R, Tucker was not entitled to summary judgment as to either the reasonableness of the entry or

qualified immunity. However, the district judge has discretion to "receive further evidence" in

deciding to accept, reject or modify the recommended decision. See id.; 28 U.S.C. § 636(B)(1)

("[t]he [district] judge may also receive furtherevidence . . . ."); see generally Hynes v. Squillace,

143 F.3d 653, 656 (2d Cir. 1998) (district court did not abuse its discretion in considering

defendants' supplemental evidence). In exercising this discretion, district courts "ordinarily

refuse to consider arguments, case law and/or evidentiary material which could have been, but

was not, presented to the magistrate judge in the first instance." Travelers Ins. Co. v. Estate of

Garcia, 00-CV-2130 (ILG), 2003 WL 1193535, at *2 (E.D.N.Y. Feb. 4, 2003) (citations omitted);

see also Wong v. Healthfirst, Inc., 04 Civ. 10061 (DAB), 2006 WL 2457944, at *1 (S.D.N.Y.

Aug. 23, 2006) ("Doing so would reduce the magistrate's work to something akin to a

meaningless dress rehearsal.") (internal quotations and citations omitted); Amadasu v. Rosenberg,

03 Civ. 6450 (LAK), 2005 WL 954916, at *1 (S.D.N.Y. Apr. 26, 2006) (noting that considering

belated evidence under Rule 72(b) "which could have been presented before the magistrate judge

would reward careless preparation of the initial papers").

Although Tucker should have timely submitted the newest declarations to Judge Mann,[3]

the court concludes that it should consider Tucker's additional evidence. See, e.g., Perez v.

Hewitt, No. 04 Civ. 10112(KMW), 2008 WL 780628, at *3-4 (S.D.N.Y. Mar. 24, 2008); Nolasco

v. United States, 358 F.Supp.2d 224, 229 n.9 (S.D.N.Y. 2004). Significantly, plaintiff has not

objected to Tucker's expansion of the record, and in fact has supplemented his own evidentiary

---

[3] Tucker's unsworn memorandum of law alleges that Alston "travels extensively . . . and, thus, was not readily available to submit a declaration . . . ." Tucker Obj. at 3. Yet at no time during the lengthy briefing period for either the motions for summary judgment or motions for reconsideration did Tucker ever request an extension of time to submit a declaration from Alston.

submissions.  See generally Pltf.'s Obj. (Dkt. No. 302) (submitted more than a month after Tucker

filed his objections).  Furthermore, the factors that led the Perez court to consider the defendants'

additional evidence militate in favor of the same conclusion in this case.  First, here as in Perez,

there is no indication that Tucker's failure to have submitted the evidence in the first instance to

Judge Mann was a "dilatory tactic" or "worked to [Tucker's] strategic advantage."  Perez, 2008

WL 780628, at *4.  Second, there is no indication that Tucker's new evidence "lacks reliability."

Id.  Third, the new evidence is "highly relevant" to this case.  Id.

In short, Tucker's lack of diligence in promptly submitting his evidentiary materials is

outweighed by the strong interest in resolving qualified immunity defenses at the pretrial stage.

See Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("[B]ecause [t]he entitlement is an immunity

from suit rather than a mere defense to liability, we repeatedly stressed the importance of

resolving immunity questions at the earliest possible stage in litigation") (internal citations and

quotations omitted); Lennon, 66 F.3d at 422 (noting that qualified immunity's "purpose of

protecting state actors from burdensome litigation by providing immunity from insubstantial suits

is effectively lost if a case is erroneously permitted to go to trial.") (citation and internal quotation

marks omitted).  Therefore, the court in its discretion will consider the latest declarations

submitted by Tucker.

### 2. Analysis of Expanded Record

Turning first to Former Agent Sam Alston's declaration, he reveals that much more

investigation preceded the 1995 search than suggested by Tucker's previous submissions to Judge

Mann.  See generally Declaration of Former Special Agent Sammie A. Alston in Support of SA

Nathan Tucker's Motion ("Alston Decl.").  When Alston received the assignment to locate and

11

arrest plaintiff, Alston confirmed with a source that plaintiff would be residing at a particular apartment within the multi-unit Premises, most likely with his girlfriend and child, and that he owned a pit bull. See Alston Decl. at ¶¶ 5-7. Additionally, Alston obtained and studied a photograph of plaintiff. See id. at ¶ 6. During his surveillance of the Premises immediately preceding the entry, Alston confirmed the presence of a pit bull, and ascertained that a vehicle parked outside the Premises belonged to Denise Sutton ("Sutton"), whom Alston's source confirmed was connected to plaintiff. See id. at ¶¶ 8-12. Prior to the Task Force's entry onto the Premises, Alston observed through a second-floor window a woman believed to be Sutton with a man Alston believed to be plaintiff, based on the photo previously provided to Alston. See id. at ¶¶ 13, 15. All of the above led Alston to believe that plaintiff was at the Premises, and he informed the Task Force, including Tucker, that he had spotted plaintiff and that the team should execute the warrant by entering the Premises. See id. at ¶¶ 15-17.

The only fact disputed by plaintiff is his actual presence at the Premises. The court therefore may disregard the agents' claimed sighting of plaintiff through the window, and assess whether the remaining facts were sufficient to create a reasonable belief that plaintiff was at the Premises. See, e.g., Golden v. City of New York, 418 F.Supp.2d 226, 231 (E.D.N.Y. 2006) ("The substantive law will identify which facts are material, and only those facts that might affect the outcome of a suit will preclude summary judgment."). In this connection, a reasonable belief requires a lesser showing than probable cause. See United States v. Lauter, 57 F.3d 212, 214 (2d Cir. 1995); Bartlett v. City of New York, 03-CV-1961 (CPS), 2005 WL 887112, at *5 (E.D.N.Y. Feb. 11 2005).

The totality of the remaining circumstances detailed in Alston's declaration create a

reasonable belief of plaintiff's presence at the Premises at the time of the warrant's execution.

See, e.g., United States v. Lovelock, 170 F.3d 339, 344 (2d Cir. 1999) (relying on totality of

information possessed by officer executing arrest warrant, in contrast to plaintiff's attempt to

"segment, isolate, and minimize each item of evidence"); cf. United States v. Terry, 702 F.2d 299,

319 (2d Cir. 1983) (noting that police executing an arrest warrant are not required to "conduct a

thorough investigation to obtain evidence of an arrestee's actual presence before entering his

residence").

      The fact that it was Alston, not Tucker, who investigated the issue of plaintiff's presence

does not alter the court's conclusion. Under the collective or imputed knowledge doctrine, an

officer who actually conducts an arrest or search but lacks sufficient information to form a

reasonable basis for the search or arrest is deemed to have the same knowledge or understanding

of other officers leading or involved in the investigation. See, e.g, Zellner v. Summerlin, 494 F.3d

344, 369 (2d Cir. 2007) (quoting United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001)). This

rule recognizes the practical limitations of complex police work by allowing officers to reasonably

rely on the knowledge of fellow officers or superiors. See Colon, 250 F.3d at 135; United States

v. Valez, 796 F.2d 24, 28 (2d Cir. 1986). "A primary focus in the imputed knowledge cases is

whether the law enforcement officers initiating the search or arrest, on whose instructions or

information the actual searching or arresting officers relied, had information that would provide

reasonable suspicion or probable cause to search or arrest the suspect." Colon, 250 F.3d at 135-36

(citing United States v. Hensley, 469 U.S. 221, 231 (1985)). Here, Alston, who possessed

sufficient knowledge to create a reasonable belief of plaintiff's presence, instructed Tucker and

the Task Force to commence the search, and Tucker is presumed to have possessed the same

information as Alston.  Therefore, Tucker is entitled summary judgment on plaintiff's Fourth

Amendment claim arising out of the 1995 search.

Alternatively, the expanded record entitles Tucker to qualified immunity based on

mistaken identity in connection with the sighting through the second-floor window.  Tucker's

latest declaration supplements his previous submissions by laying a factual foundation as to why it

would be reasonable for the agents to mistake someone who without question was on the Premises

-- Michael Barrett -- for plaintiff.  See generally Supplemental Declaration of Special Agent

Nathan Tucker in Support of Objections to the 2007 R&R ("Tucker Supp. Decl.") (Dkt. No. 299).

In particular, Tucker notes that the individual he observed through the second-floor window "had

a similarly shaped face, a wide nose, pointy ears, and a dark complexion" as compared to the

photo of plaintiff that Tucker had studied.  See Tucker Supp. Decl. at ¶ 6.  Tucker also submits a

photo of Barrett, along with the photo of Dockery that Tucker had with him when he executed the

search.  See Ex. 1 and Ex. 2 (attached to Tucker's Supp. Decl.).  Despite the fourteen-year age

differential between plaintiff and Barrett, see Ex. 2 (attached to Tucker Supp. Decl.) (listing

Barrett's birth year as 1960), reasonable officers could disagree as to whether it was objectively

reasonable for Tucker (and Alston) to mistake Barrett for plaintiff, especially when viewing only

the person's head and shoulders through a second-floor window.  See, e.g., Lennon, 66 F.3d at

420-21.  Therefore, on the basis of the expanded record, Tucker's qualified immunity defense

entitles him to summary judgment on the Fourth Amendment claim as it relates to the 1995 entry

into the Premises.[4]

---

[4]  Tucker further asserts that the 1995 execution was identical to a 1996 search of the
Premises, for which this Court granted Tucker qualified immunity, and that the court should on
that basis grant him qualified immunity for the 1995 search.  See Tucker Obj. at 18-20. Judge

### B. Plaintiff's Fourth Amendment Claim Against Reed and Young Concerning the 1995 Search

Reed and Young also object to Judge Mann's conclusion in the 2007 R&R that they were not entitled to summary judgment on plaintiff's Fourth Amendment claim involving the 1995 search of the Premises. See Obj. to Rep. & Rec. filed by Defts. District of Columbia, Pamela Reed and Phineas Young (Dkt. No. 296) ("R&Y Obj.") at 5-13. As they did in their prior objections to the 2006 R&R, they again deny that they were present in New York during the 1995 search and complain that Judge Mann relied on inconsistent and implausible statements proffered by Dockery in reaching her conclusion that there existed a genuine issue of fact as to whether they were involved in the 1995 entry. See id. at 5-9. Young also proffers additional evidence supporting his claim that he was not in New York on the date in question. See Compl. Statement dated October 23, 1995, submitted as Ex. A. to R&Y Objs. As evidence that the two officers were involved in the 1995 search, Dockery had proffered his own affidavit summarizing a conversation he claims to have had with Reed and Young in which they allegedly admitted their participation in the 1995 search. See Pltf. Aff. dated 8/18/05 at ¶ 5, attached to Pltf.'s Mem. (Dkt. No. 246) ("8/18/05 Pltf. Aff."). Given this record, Judge Mann was no doubt correct that however "implausible[] . . . Dockery's assertion, [she was] . . . constrained, on this motion for summary judgment, to construe the facts in the light most favorable to [Dockery] . . .," 2006 R&R at 34-35,

---

Mann provided a reasonable basis for distinguishing the two factual scenarios. See 2007 R&R at 23-24.

     Equally unpersuasive is Tucker's argument that the court should strike plaintiff's opposition papers based on his failure to have filed a Rule 56.1 Counter-Statement, see Tucker Obj. at 7-10, because courts have discretion to overlook procedural errors, particularly when committed by *pro se* parties. See Griffin v. TNT Int'l Express, No. 05 Civ. 10475(PKC), 2008 WL 697680, at *1 n.1 (S.D.N.Y. Mar. 12, 2008); Waheed v. SUNY Brooklyn Educ. Opportunity Ctr., No. 04-CV-5630 (DLI)(LB), 2007 WL 2126092, at *1 n.1 (E.D.N.Y. July 24, 2007).

and commit resolution of the credibility issue to the jury.

This does not end the inquiry, however. Based on the recently expanded record, the court has concluded that, as a matter of law, both Former Agent Alston of the Federal Bureau of Investigation and, by attribution under the imputed knowledge doctrine, Special Agent Tucker held a reasonable belief that Dockery was present at the Premises on October 23,1995 when law enforcement agents sought to execute the arrest warrant. See supra at pp. 11-14. The resolution of this factual dispute entitled Tucker to summary judgment on plaintiff's Fourth Amendment claim arising out to the 1995 entry. By the same analysis, it is appropriate to attribute to Reed and Young under the imputed knowledge doctrine information possessed by Alston giving rise to a reasonable belief that Dockery was at the Premises at the time of the search. Thus, even assuming that Reed and Young were present at the 1995 incident and entered the Premises with Alston, Tucker, and other Task Force members to execute the warrant, they too would not have been acting in violation of plaintiff's Fourth Amendment rights. They are therefore entitled to summary judgment on this claim.

### C.      Plaintiff's Fourth Amendment Claims Against Tucker, Reed, and Young Concerning the Scope of the 1995 Search

Although defendants are entitled to summary judgment on plaintiff's §1983 claim that their 1995 entry into the Premises violated his Fourth Amendment rights, an additional Fourth Amendment inquiry remains. Dockery also complains that defendants violated his Fourth Amendment rights by conducting a search that was unreasonable in its scope, thus resulting in the unlawful damage to his property. See 3d Am. Compl. (Dkt. No. 154) at 5-9, 11. In the 2006 and 2007 R&Rs, Judge Mann had no occasion to reach the merits of plaintiff's claims regarding the

16

scope of the search as the lawfulness of the 1995 entry itself could not, on the record then before

the court, be resolved on summary judgment. See 2006 R&R at 51. But even if, as is now the

case here, it is established that entry onto the Premises was lawful, "excessive or unnecessary

destruction of property in the course of a search may violate the Fourth Amendment." United

States v. Ramirez, 523 U.S. 65, 71 (1998) (internal citations omitted). Tucker now seeks

summary judgment dismissing plaintiff's Fourth Amendment claim that the scope of the 1995

search was unreasonable. He maintains that the search was reasonable in scope and, moreover,

that his conduct was consistent with 18 U.S.C. § 3109, which authorizes law enforcement officers

to force entry under certain circumstances. See 2006 R&R at 49 (citing Tucker. Mem. in Supp. of

Mot. for Summ. J. (Dkt. No. 215) at 16-19). Reed and Young also adopt the version of events

stated by Tucker. See id. at 49-50 (citing Mem. of D.C. Defts. in Supp. of Mot. for Summ. J.

(Dkt. No. 227) at 5-6, 14-18).

Under the so-called "knock and announce" rule, codified at 18 U.S.C. § 3109, law

enforcement officers are authorized to break into a dwelling and any "inner door or window or . . .

anything therein" to execute a valid arrest warrant after announcing their authority and purpose

and being denied entry. 18 U.S.C. § 3109; see also, Cody v. Mello, 59 F.3d 13, 16 (2d Cir.

1995).[5] Here, Tucker has submitted a sworn affidavit detailing how, during the course of the 1995

entry, he complied with these requirements, see Decl. of Tucker in Supp. of Sum. Judgment at ¶ 9

(Dkt. No. 217) (hereinafter "Tucker Decl."). This account is confirmed by the affidavit of Denise

---

[5]       Although § 3109 explicitly applies only to search warrants, it has been held to
apply to arrest warrants as well. See, e.g., Bartlett v. City of New York, No. 03-CV-1961 (CPS),
2005 WL 887112, at *7 (E.D.N.Y. Feb. 11, 2005) (citing United States v. Alejandro, 368 F.3d
130, 133 (2d Cir. 2004) (applying § 3109 to the execution of a valid arrest warrant in a
residence)).

Sutton, who was present at the 1995 entry. See Aff. of Dennise Sutton, submitted as Ex. H of Matthews Decl. (Dkt. No. 219) at ¶ 3 (hereinafter "Sutton Aff."). Dockery does not dispute these assertions, nor could he given that he has denied being present at the Premises during the 1995 search. See, e.g., Dockery Dep. submitted as Ex. E to Matthews Decl., at 45-46 (Dkt. No. 219). Because the undisputed evidence thus establishes that the forced entries into the Premises and its interior apartments were authorized by the statute, the resulting damage to the external and internal doors and their adjacent panels did not violate the Fourth Amendment.

Dockery also alleges that defendants damaged two toilets and some electrical fixtures, and made holes in floors and ceilings. See 3d Am. Compl. at 4-8. Again, however, Dockery has submitted no direct evidence to establish that defendants were personally responsible for the destruction of this property. Moreover, Dockery's acknowledgment that he had not been present at the Premises for at least one month before the October 23, 1995 search, see Dockery Dep. at 46, precludes even a weak circumstantial inference based on his testimony that defendants were responsible for the alleged damage.

In support of his claim, Dockery relies exclusively on affidavits from friends and family members, none of which raise any genuine issue of material fact with respect to the cause or extent of the alleged damage to the interior of the Premises.[6] For example, Dockery's own affidavit recounting a conversation with Denise Sutton, in which she allegedly informed him that police officers were responsible for the damage, see 8/18/05 Pltf. Aff. at ¶ 5; see also Dockery

---

[6] The court assumes *arguendo* that these affidavits are admissible despite Judge Mann's observation that some were unfairly submitted after the close of discovery. See 2006 R&R at 51, n.55. Unless otherwise noted, all of these affidavits were submitted as exhibits to Dockery's memorandum in opposition to Tucker's motion for summary judgment, see Dkt. No. 241.

Dep. at 52-53, is inadmissible hearsay. Dockery also submits affidavits from individuals who acknowledge that they were not present at the Premises at the time of the 1995 search. See, e.g., 3/3/04 Aff. of George Crawford & 11/10/03 Aff. of Everton Augustos (both detailing repair work done to Premises in November and December of 1995); 6/19/04 Aff. of Geanette Dunning dated 6/19/04 & 6/26/06 Aff. of Creola Dunning (both acknowledging absence from the Premises due to a trip to Pennsylvania beginning in September of 1995). Finally, Dockery submits affidavits from three individuals who claim to have witnessed the Task Force's entry into the Premises on October 23, 2005 and the resulting damage to some doors and panels. Notably, however, these affidavits do not allege that the officers caused any damage to toilet bowls, floors, ceilings, or fixtures. See 2/22/00 Aff. of Ilma Davis; 3/26/05 Aff. of Tiara Bullock; 6/14/01 Aff. of Harris Harding (submitted as Ex. B5 to Pltf.'s 9/5/05 Letter to Judge Mann (Dkt. No. 259)).

By contrast, defendants have submitted both their own sworn affidavits denying responsibility for the alleged damage[7] and the sworn affidavit of Ms. Sutton, who was at the Premises during the 1995 search, in which she denies, based on personal knowledge, that the agents caused any of the damage that Dockery alleges, see Sutton Dep. at ¶¶ 7-8 (Dkt. No. 219-2). Based on this record, it is highly doubtful that a reasonable juror could find Tucker, or any member of the Task Force, responsible for the alleged interior property damage.

Even assuming that Dockery has raised a genuine issue of fact regarding the cause of the damage to the Premises, however, his claim still fails on the merits. It is well established that "officers executing search warrants on occasion must damage property in order to perform their

---

[7]  See Tucker Aff. at ¶ 7. Defendants do admit that minor damage occurred to doors and ceilings at the Premises as a result of the 1995 search.

duty," Cody v. Mello, 59 F.3d 13, 16 (2d Cir. 1995) (quoting Dalia v. United States, 441 U.S.

238, 258 (1979)), and that, "before any . . . liability can be imposed for property damage occurring

in a lawful search, it must be established that the police acted unreasonably or maliciously [and

that] mere negligence is not enough." Id. (citations omitted).[8]   In this case, considering the

agents' reasonable belief that Dockery was at the Premises on the day of the 1995 search, coupled

with their inability to locate him once inside the house, the court finds that the damage Dockery

claims to ceilings, floors and locked doors was well within the bounds of a constitutionally

permissible effort to locate Dockery's potential hiding place.  Moreover, with respect to the

claimed destruction of two toilets and some electrical fixtures, it is settled that some disarray in

conducting a search, including the tangential destruction of items that could not contain the object

of the search, does not state a claim of constitutional magnitude.  See, e.g., Williams v. E.B.

Alford, 647 F.Supp. 1386, 1391-93 (M.D. Ala. 1986) (destruction of stereo and holes in the walls,

as well as general disarray in apartment resulting from execution of a search warrant for drugs, did

not violate the Fourth Amendment); Soichet v. Toracinta, 111 F.3d 124, 1997 WL 183776, (2d

Cir. 1997) (table opinion) (conclusory allegations that apartment was left in disarray and phone

cord broken, while executing valid search and arrest warrants, do not state claim of violation of

Fourth Amendment).  Because Dockery "has failed to [adduce evidence] that such damage [to the

Premises as he alleges] is anything more than ordinary disarray incident to the execution of the

warrant, or that the officers' actions were malicious or unreasonable," defendants are entitled to

---

[8]      Although Cody deals with due process liability, subsequent cases in this circuit
have applied the standard to Fourth Amendment claims.  See, e.g., Diaz v. City of New York, 00-
CV-2944 (JMA), 2006 WL 3833164 (E.D.N.Y. Dec. 29, 2006); Notices v. Koshes, 386
F.Supp.2d 23 (D.Conn. 2005).

summary judgment on this Fourth Amendment claim asserting a search of excessive scope causing unreasonable property damage. See Kirkland v. City of New York, No. 06-CV-0331 (NG), 2007 WL 1541367, at *& (E.D.N.Y. May 25, 2007) (damage to antique table, front door, door frame, and wall near door, caused during execution of search warrant, held not unreasonable or malicious).

### D.      Plaintiff's Tort Claims Against Reed and Young[9]

In her April 28, 2005 Memorandum and Order concerning plaintiff's requested third amendment of his complaint, Judge Mann, liberally construing the pleading, determined that plaintiff had stated claims against defendants under New York law based on the tort theories of trespass to chattels, trespass to land, and conversion. See M&O dated 4/28/05 at 5-6, n.5 (Dkt. No. 207). In her 2006 R&R, Judge Mann recommended denial of motions by Reed and Young for summary judgment dismissing these claims. See 2006 R&R. 57-60. At that time, defendants had not yet adduced evidence eliminating the material factual dispute as to the lawfulness of defendants' 1995 entry into the Premises. Accordingly, on the record then before her, Judge Mann correctly concluded that she could not "find as a matter of law that defendants' forced entry and search, which resulted in damage to plaintiff's real property, was 'authorized' and, thus, was not a trespass." Id. at 59.

Now, however, based on the supplemented record, the court has found that both the 1995 entry into the Premises and the scope of the search that ensued were reasonable as a matter of law, warranting summary judgment on these Fourth Amendment claims. These findings also compel

---

[9]      In her 2006 R&R, Judge Mann recommended dismissal of these tort claims as against Tucker for lack of subject matter jurisdiction, see 2006 R&R at 14-18, and Dockery has raised no objection to this recommendation. See supra at n.2.

the conclusion that Reed and Young, were they participants in that search, cannot be held liable for any of the torts alleged.

As Judge Mann noted, under New York law, an officer has a privilege to trespass upon property, pursuant to an arrest warrant, if the entry comports with constitutional limitations.  See 2006 R&R at 59 (citing Voskerchian v. United States, No. 98-CV-0335 (EM), 1999 WL 66709, at *4 (W.D.N.Y. Feb. 10, 1999)).  Moreover, "law enforcement personnel acting lawfully in the furtherance of their duty are excused from what may be otherwise trespassory acts." Hand v. Stray Haven Humane Soc. and S.P.C.A., 21 A.D.3d 626, 629 (N.Y. App. Div. 2005) (citing People v. Czerminski, 94 A.D.2d 957, 957 (N.Y. App. Div. 1983)).  Similarly, an intentional interference with plaintiff's personal property is not actionable as a trespass to chattels unless the interference is "without justification." In re Jetblue Airways Corp. Privacy Litig., 379 F.Supp.2d 299, 327 (E.D.N.Y. 2005) (quoting School of Visual Arts v. Kuprewicz, 771 N.Y.S.2d 804, 807 (N.Y. Sup. Ct. 2003)).  Finally, "exercis[ing] the right of ownership over goods belonging to another to the exclusion of the owner's rights" is a "conversion" only if it is unauthorized.  Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 1996) (quoting Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44 (1995)).  Having found the scope of the officer's 1996 search of the Premises authorized by the Fourth Amendment, the state law tort claims against Reed and Young cannot be sustained.[10]

---

[10]       Moreover, as Judge Mann also noted, because real property and the fixtures attached thereto cannot properly be characterized as chattels or personal property, see 2006 R&R at 59-60, n. 56 (citing Roemer & Featherstonhaugh, P.C. v. Feathersonhaugh, 699 N.Y.S.2d 603 (3d Dep't. 1999)), plaintiff cannot state a claim for either trespass to chattels or conversion with respect to the damage he alleges was caused to the doors and ceilings of his building, or to other fixtures.

## II.    Plaintiff's Motions for Reconsideration Based on Newly Discovered Evidence and for Joinder of Parties and His Objections to the 2007 R&R

### A.    Plaintiff's Motion for Reconsideration Concerning the Validity of the Arrest Warrants

Both the 1995 and 1996 entries into the Premises were predicated on the existence and validity of four arrest warrants for Dockery issued by the Superior Court for the District of Columbia between August 14, 1995 and February 2, 1996.  This court's September 24,1998 Opinion and Order upholding the1996 entry and arrest found the entry justified by the existence and validity of at least three of the four warrants – specifically, a January 5, 1996 warrant in case #F153-96 issued upon an indictment charging Dockery with first degree murder, see Warrant submitted as Ex. C to 9/22/97 Tucker Aff. (Dkt. No. 36); a January 23, 1996 warrant, also issued upon an indictment, charging him with another first degree murder, see Ex. E to 9/22/97 Tucker Aff.; and a February 2, 1996 warrant based on an affidavit and complaint charging him with parental kidnaping, see Ex. G to 9/22/97 Tucker Aff.; see generally 9/24/98 Op. at 21-23.  In her 2006 R&R, adhered to in her 2007 R&R, Judge Mann found that the 2005 entry into the Premises was justified by a valid, active arrest warrant issued for Dockery on August 14, 1995 based on a complaint charging him with obstruction of justice.  See 2006 R&R at 39-42; 2007 R&R at 9-10.

The bulk of plaintiff's recent submissions, purportedly relying on "newly discovered evidence," argue that none of the four arrest warrants justifying the entries were in fact valid, rendering both entries into the Premises unlawful. See Pltf.'s Obj. dated 2/22/08 (Dkt. No. 302) at ¶¶ 1-37, 73-80, and exhibits thereto; Pltf.'s "Supp. of Disclosure and Resp." dated 3/2/08 (Dkt. No. 303) and exhibits thereto.  Even assuming arguendo that plaintiff's proffers constitute newly discovered evidence within the meaning of Rule 60(b), Fed R. Civ. P., and that his motion for

relief on the basis of that evidence is timely within the meaning of Rule 60(c), Fed. R. Civ. P.,

none of plaintiff's evidence even bears on, much less impugns the accuracy of the repeated

findings of this court and Judge Mann that the arrest warrants for Dockery were, as a matter of

law, valid and active at the time of the entries into the Premises.

The various assorted documents constituting plaintiff's "newly discovered evidence"

consist of the following: (1) a computer printout entitled "Public Information Inmate Data as of

10-22-2007," which recounts plaintiff's movements between prison facilities throughout his

current incarceration commencing February 7, 1996 and during a prior incarceration in 1992, see

Ex. 1 to Pltf.'s Obj. of 2/22/08; (2) various computer printouts recording Dockery's inmate

sentence and commitment data, several of which, with respect to entries for dates of issuance and

execution of a warrant, recite "N/A", see Ex. A to Pltf.'s Obj. of 2/22/08; (3) a computer printout

reciting the disposition of a number of charges against Dockery, see Attach. B to Pltf.'s Obj. of

2/22/08; (4) a computer printout listing the charges in Indictment F153-96, which resulted in the

issuance of the January 5, 1996 murder warrant, see Ex. 8 to Pltf.'s Obj. of 2/22/08; and (5)

miscellaneous grand jury documents that plaintiff purportedly received in response to a Freedom

of Information Act request that plaintiff himself characterizes as "irrelevant", see Ex. 3 to Pltf.'s

Obj. of 2/22/08. As none of these submissions is of the slightest pertinence to any of the four

arrest warrants that are the subject of this suit, they cannot create a material issue of fact as to the

validity of those warrants.[11]

_____

[11]     Plaintiff's objections, Pltf.'s Obj. of 2/22/08 at ¶¶ 22-31, also dispute Judge
Mann's conclusion, addressed in both R&Rs, see 2006 R&R at 40-43, 2007 R&R at 9-10, that he
is collaterally estopped from litigating the validity of the August 14, 1995 warrant that justified
the1995 entry into the Premises because the validity of that warrant had previously been
established by the District of Columbia Superior Court in deciding plaintiff's collateral attack on

## B.     Plaintiff's Remaining Objections

Plaintiff's remaining objections to the 2007 R&R are also unavailing.  For example, he disputes Judge Mann's recommendation in the 2007 R&R, see 2007 R&R at 28-30, that the Fourth Amendment claims against Young and Reed in the original complaint concerning the 1996 entry should be dismissed.  See Pltf.'s Obj. of 2/22/08 at ¶¶ 38-39.  Having appended as an exhibit to his objections an excerpt of the testimony of an unidentified witness at his criminal trial who was apparently present in New York City at the time of the 1996 search, see Ex. J. to Pltf.'s Obj. of 2/22/08, Dockery urges this constitutes proof that Reed and Young, contrary to their own affidavits, see Aff. of Young in Supp. of Mot. to Dismiss (Dkt. No. 225) at ¶¶ 5-6; Aff. of Reed in Supp. of Mot. to Dismiss (Dkt. No. 226) at ¶¶ 5-6, were present at the Premises during the 1996 entry and thus bore personal liability for that entry and search.  Notably, nothing  in the proffered testimony suggests that the unnamed witness was actually present at the scene of the 1996 entry.  More importantly, even assuming that Reed and Young were present at the Premises during the 1996 search, Judge Mann recommended dismissal of the claim against them based on undisputed evidence warranting the imputation to them of the information possessed by Agent Tucker at the scene of the entry, which gave rise to a reasonable belief that exigent circumstances existed justifying the entry, see 2007 R&R at 30, thus establishing the defense of qualified immunity as a matter of law.

Dockery also seeks to resurrect the only claim that he was not permitted to add as part of his proposed amended complaint in 2003.  Specifically, Dockery contends that his due process

---

his criminal conviction.  In doing so, however, plaintiff advances substantially the identical arguments previously addressed to and correctly rejected by Judge Mann in her opinions. See 2007 R&R at 5-10; 2006 R&R at 40-43.

rights were violated when his daughter Tiara was improperly removed from his home. See Pltf.'s Obj. of 2/22/08 at ¶¶ 41-72. However, he fails to dispute Judge Mann's finding that there are no allegations concerning Tiara in the case, as he was denied permission five years ago to allege that "Tiara's removal violated [his] due process rights." See 2007 R&R at 31 (adopted by M&O dated 6/18/03 (Dkt. No. 152)).

### C. Plaintiff's Motion for Joinder

Finally, by papers dated February 11, 2008, Dockery filed a motion characterized as one for "Joinder of Plaintiffs Needed for Just Adjudication." See Dkt. No. 300. In substance, he seeks to file a complaint that adds as plaintiffs four of his daughters and sets forth, as against the same defendants sued in this case as well as other unnamed officers, allegations substantially mirroring all of the claims dismissed as to plaintiff by this and prior opinions. Dockery's transparent effort to expand and further delay resolution of this twelve year litigation must be rejected.

Whether to permit joinder of plaintiffs is within the discretion of the district court. See MOORE'S FED. PRACTICE 3D at § 20.02[2][a][iii] (2007). The court should exercise its discretion to deny joinder, however, if plaintiff has delayed excessively in requesting it, see, e.g., Barr Rubber Prods. Co. v. Sun Rubber Co., 425 F.2d 1114, 1126-27 (2d Cir. 1970), if joinder would prejudice the interests of litigants, see, e.g., Krumme v. WestPoint Stevens, Inc., 143 F.3d 71, 88 (2d Cir. 1998), or if the proposed amendment is otherwise futile or frivolous, see, e.g., Renard v. Dillman, 162 F.3d 1148 (2d Cir. 1998) (table opinion), or the product of improper motives, see, e.g., Landmark Development Group v. JEG Holdings, Inc., 185 F.R.D. 126, 128 (D.Conn. 1999). Each of these reasons to deny joinder weighs strongly against permitting plaintiff's request. Some twelve years have elapsed since the commencement of this litigation and plaintiff has three times

been granted leave to amend his complaint. The burden to defendants of having to defend against claims arising twelve to thirteen years ago, many of which have already been dismissed on the merits, is wholly unjustified. Under the circumstances, the court can only conclude that the motive of plaintiff's request is to vexatiously multiply claims and thwart the long-delayed resolution of his case. Accordingly, the motion for joinder is denied.

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss and for summary judgment, Dkt. Nos. 215, 227, and their motion for reconsideration, Dkt. Nos. 279, 280, 285 are granted. Dockery's motion for summary judgment, Dkt. No. 246, as well as is his motions for joinder, Dkt. No. 300, and for appointment of counsel, Dkt. No. 304, are denied. In addition, the court hereby adopts, in relevant parts as indicated in the text, the Report and Recommendations of Judge Mann as the opinion of the court pursuant to 28 U.S.C. § 636 (b)(1).

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.


_____/s/_____
Allyne R. Ross
United States District Judge


Dated: June 25, 2008
       Brooklyn, New York

SERVICE LIST:

**Pro Se Plaintiff**

**Jasper Lloyd Dockery**
# 39631-053
United States Penitentiary
P.O. Box 2099
Pollock, LA 71462

**Attorney for Defendant Tucker**

**Gail A. Matthews**
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

**Attorney for D.C. Defendants**

**E. David Woycik**
Sanders Sanders & Block, P.C.
100 Herricks Road
Mineola, NY 11501

cc:          Magistrate Judge Mann